THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| James Niehues; James Niehues, LLC; and Open Road Ski Company LLC,<br><br>Plaintiffs,<br><br>v.<br><br>Rick Whitemyer, individually and dba Gnarwalls; Amberlee Whitemyer, individually and dba Gnarwalls; and Buzz Graphics, Inc. dba Gnarwalls,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER DENYING [25] PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**<br><br>Case No. 1:21-cv-00134-DBB-CMR<br><br>District Judge David Barlow<br><br>Magistrate Judge Cecilia M. Romero |

In this case, James Niehues; James Niehues, LLC (Niehues, LLC); and Open Road Ski Company, LLC (ORSC) (collectively Plaintiffs) allege Rick Whitemyer, individually and d/b/a Gnarwalls; Amberlee Whitemyer, individually and d/b/a Gnarwalls; and Buzz Graphics, Inc. d/b/a Gnarwalls (collectively Defendants) committed three counts of copyright infringement.[1] Before the court is Plaintiffs' Motion for Summary Judgment on all counts.[2] Having considered the briefing, pleadings, and related exhibits, the court concludes the motion may be resolved without oral argument.[3] For the following reasons, the motion is denied.

## UNDISPUTED FACTS

James Niehues is an artist specializing in hand-painted ski resort trail maps.[4] Mr. Niehues registered copyrights for many of his paintings, including three which are relevant here: 1993

---

[1] Complaint for Copyright Infringement (Complaint) ¶¶ 11–14, 27–31, ECF No. 2, filed Oct. 5, 2021.
[2] Mot. Summ. J., ECF No. 25, filed Dec. 15, 2022.
[3] *See* DUCivR 7-1(f).
[4] Mot. Summ. J. at 1; Complaint ¶¶ 2, 11–13.

Base Painting for Jackson Mountain ski resort;[5] Base Painting for Taos, NM 1993 Ski Map;[6] Painting of Big Sky 2014 Ski Map.[7] Beginning in January 2009, Mr. Niehues exclusively licensed all his copyrights to Niehues, LLC.[8]

Niehues, LLC later entered into a licensing agreement (2018 Licensing Agreement) with ORSC, granting ORSC exclusive rights to "produce, market and sell physical and digital books . . . of James's ski art," along with exclusive rights to produce posters and limited-edition prints.[9] Attached to the 2018 Licensing Agreement was an Exhibit listing the covered ski art and delineating the rights granted.[10] The Exhibit granted ORSC no rights for the 1993 painting of Jackson Mountain ski resort.[11] The notes to the Exhibit stated, "James does not have the Book or Print rights to these images."[12] As to the 1993 Taos, NM painting, ORSC was only granted book rights, meaning "granted the right to produce, market, and sell this image for Books."[13] ORSC did obtain exclusive book and print rights for the Big Sky 2014 ski map painting.[14]

The next year, in 2019, Niehues, LLC and ORSC executed an Addendum to the 2018 Licensing Agreement.[15] In the Addendum, ORSC acquired "Expanded Print and Other Graphic Rights," specifically, the "exclusive right to produce, market and sell all of James Niehues's

---

[5] Jackson Mtn. Cert. of Reg., ECF No. 41-1, filed Feb. 24, 2023.
[6] Taos Cert. of Reg., ECF No. 41-4, filed Feb. 24, 2023.
[7] Big Sky Cert. of Reg., ECF No. 25-1, filed Dec. 15, 2022.
[8] License to Niehues, LLC, ECF No. 26, filed Dec. 16, 2022.
[9] 2018 Licensing Contract with ORSC at 1, ECF No. 33-1, filed Jan. 18, 2023.
[10] Exh. B, ECF No. 33-1, filed Jan. 18, 2023.
[11] *Id.* at 12 (no. 152).
[12] *Id.* at 15.
[13] *Id.* at 10 (no. 87), 15.
[14] *See generally id.* It is not entirely clear from Exhibit B that Niehues, LLC granted ORSC book and print rights to the Big Sky 2014 Sky Map Painting. However, Plaintiffs assert this fact in their Motion, and Defendants do not object in their Opposition. Mot. Summ. J. at 4, ¶ 5; Opp. Summ. J. at 3, ECF No. 35, filed Jan. 27, 2023. Thus, for the purposes of this Motion it is undisputed.
[15] Addendum, ECF No. 33-1, filed Jan. 18, 2023.

existing Ski Art listed" in the Exhibit "through all channels."[16] The Addendum also revised the Exhibit to grant book and print rights for additional images, including the 1993 painting of Jackson Mountain ski resort.[17] ORSC owned these rights through December 31, 2029.[18]

The Whitemyers reside in Utah and co-own a printshop called Buzz Graphics, using the trade name Gnarwalls.[19] Through their website gnarwalls.com, the Whitemyers sell artwork.[20]

In November 2020, ORSC emailed Mr. Whitemyer concerning Defendants' alleged unauthorized online sales of Mr. Niehues's artwork.[21] ORSC attached some of Mr. Niehues's copyright registrations and indicated that, upon information from several unnamed resorts, Defendants did not have sublicenses to use Mr. Niehues's trail maps.[22] ORSC asked Defendants to "immediately stop and do not restart any advertising, marketing and/or sales on your websites or other sites . . . that contain James Niehues art for which you do not have a written licence[sic]."[23] ORSC warned Defendants that "[a] willful reproduction of any of James' copyrighted works without a license would constitute infringement."[24]

Shortly after this email was sent, two alleged unauthorized copies of Mr. Niehues's ski maps were purchased from gnarwalls.com—a Jackson Mountain ski map, and a Big Sky ski map.[25] Following these purchases, ORSC sent a cease-and-desist letter to Defendants.[26] The

---

[16] *Id.* at 3.2. The Addendum refers to "Schedule B" despite the contract only containing an "Exhibit B" with a listing of the artwork. *Id.* The court assumes the reference to "Schedule B" was merely an error.
[17] *Id.* at 3.9.
[18] First Amendment to 2018 Licensing Contract, ECF No. 33-1, filed Jan. 18, 2023.
[19] Complaint ¶¶ 3–6; Answer ¶¶ 3–5, 19, ECF No. 13, filed Dec. 9, 2021.
[20] Mot. Summ. J. at 4; Opp. Summ. J. at 3.
[21] Pls. Exh. 9 at 1, ECF No. 26-5, filed Dec. 16, 2022.
[22] *Id.*
[23] *Id.*
[24] *Id.*
[25] Pls. Exh. 6, ECF No. 26-2, filed Dec. 16, 2022 (Picture of Jackson Hole Gnarwalls map and receipt for purchase dated Dec. 18, 2020); Pls. Exh. 7, ECF No. 26-3, filed Dec. 16, 2022 (Picture of Big Sky Gnarwalls map and receipt for purchase dated Dec. 9, 2020).
[26] Pls. Exh. 10, ECF No. 26-6, filed Dec. 16, 2022.

letter informed Defendants that Mr. Niehues had licensed to ORSC—not Defendants—the rights to create posters of his work.[27] The letter then informed Defendants that their willful reproduction of Mr. Niehues's copyrighted works without a license qualified as copyright infringement subject to statutory damages.[28]

## PROCEDURAL HISTORY

On October 5, 2021, Plaintiffs filed their Complaint, asserting Defendants committed three counts of copyright infringement by selling unauthorized prints of trail maps for Jackson Mountain ski resort, Taos, NM ski resort, and Big Sky ski resort.[29]

Discovery commenced and centered around documents identifying ownership of the copyrights to the relevant trail maps. A 2018 document produced in discovery shows Niehues, LLC sought "permission from Jackson Hole Mountain Resort [Jackson Resort] for Book Rights to include the 1993" Jackson Mountain ski map painting into a book on Mr. Niehues's ski art.[30] The document stated, "I have the copyrights of all ski map images produced after 2007" but the 1993 Jackson Mountain painting "is one without book rights."[31] The document further indicated "Jackson Hole Mountain Resort retains the copyright for the 1993 Jackson Hole Mountain ski map image."[32] The Jackson Resort marketing director granted Niehues, LLC "use of the 1993 (revised 2015) Jackson Hole ski map painting in a coffee table book" on December 27, 2018.[33]

---

[27] *Id.* at 1.
[28] *Id.*
[29] *See generally* Complaint.
[30] Defs. Exh. B, ECF No. 35-1, filed Jan. 27, 2023.
[31] *Id.*
[32] *Id.*
[33] *Id.*

A similar document was produced regarding the Taos, NM ski resort [Taos Resort].[34] In 2018, Niehues, LLC sought and obtained permission from the Taos Resort to use the 1993 Taos, NM ski map painting in a coffee table book.[35] This document likewise stated, "Taos retains the copyright for the 1993 Taos ski map image."[36]

A 2013 letter between Mr. Niehues and Big Sky Resort was also produced in discovery.[37] The letter discussed arrangements for Mr. Niehues to repaint the Big Sky trail map and outlined ownership rights for the project.[38] Mr. Niehues wrote, "[u]pon full payment Big Sky will have the license to use the image in any manner for as long as wanted. I retain ownership of the original and the original copyright."[39]

At the close of discovery, Plaintiffs filed the present motion for summary judgment.[40] Defendants opposed the motion[41] and filed their own motion to reopen limited discovery on the issue of copyright ownership, based in part on the discovery documents described above.[42] In response, Plaintiffs filed an opposition to that motion to reopen limited discovery,[43] and a reply in support of their motion for summary judgment.[44]

On April 17, 2023, Magistrate Judge Cecilia M. Romero denied Defendants' motion to reopen limited discovery after finding Defendants failed to meet their burden for additional

---

[34] Defs. Exh. C, ECF No. 35-1, filed Jan. 27, 2023.
[35] *Id.*
[36] *Id.*
[37] Defs. Exh. A, ECF No. 35-1, filed Jan. 27, 2023.
[38] *Id.*
[39] *Id.*
[40] ECF No. 25.
[41] ECF No. 35.
[42] Defs. Mot. to Reopen Disc., ECF No. 36, filed Jan. 27, 2023.
[43] Pls. Opp. Mot. to Reopen Disc., ECF No. 39, filed Feb. 24, 2023.
[44] Reply Summ. J., ECF No. 41, filed Feb. 24, 2023.

discovery under the Federal Rules of Civil Procedure.[45] The court now turns to Plaintiffs' pending motion for summary judgment.

## LEGAL STANDARD

A court must grant summary judgment if the moving party shows "there is no genuine dispute of material fact" and it is "entitled to judgment as a matter of law."[46] "A 'genuine' issue is one for which 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"[47] And a fact is material if, under the governing substantive law, it could "affect the outcome of the suit."[48]

"[T]he moving party carries the burden of showing beyond a reasonable doubt that it is entitled to summary judgment."[49] If the moving party also carries the burden of persuasion at trial, "a more stringent summary judgment standard applies."[50] Under those circumstances, to obtain summary judgment "the moving party must establish, as a matter of law, all essential elements of the issue."[51] The nonmovant is then "obligated to bring forward any specific facts alleged to rebut the movant's case."[52] "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."[53] When determining whether a movant has met this burden, the inquiry is "whether the evidence presents a sufficient disagreement to

---

[45] Order Dng. Mot. to Reopen Disc., ECF No. 46, filed April 17, 2023.
[46] Fed. R. Civ. P. 56(a).
[47] *Pelt v. Utah*, 539 F.3d 1271, 1280 (10th Cir. 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).
[48] *Liberty Lobby*, 477 U.S. at 248; *see also United States v. Simons*, 129 F.3d 1386, 1388 (10th Cir. 1997) ("The substantive law of the case determines which facts are material.").
[49] *Pelt*, 539 F.3d at 1280 (internal quotation marks and citations omitted).
[50] *Id.*
[51] *Id.* (internal quotation marks and citations omitted).
[52] *Id.*
[53] *Liberty Lobby*, 477 U.S. at 255.

require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."[54]

## DISCUSSION

Plaintiffs ask this court to find Defendants liable on summary judgment for copyright infringement and to impose enhanced damages for willful infringement.[55] Plaintiffs assert Defendants have infringed on three of Mr. Niehues's copyrighted trail maps: Jackson Mountain ski resort; Taos, NM ski resort; and Big Sky ski resort.[56]

The Copyright Act of 1976 provides protection for unauthorized copying[57] of "original works of authorship fixed in any tangible medium of expression."[58] To succeed on a claim for copyright infringement, a plaintiff must prove both (1) ownership of a valid copyright, and (2) unauthorized copying of original elements of copyrighted material.[59]

### A. Ownership of Valid Copyright

The first element in a copyright infringement case "requires only the existence of a valid copyright."[60] By statute, a "certificate of registration made before or within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate."[61]

---

[54] *Id.* at 251–52.
[55] Mot. Summ. J. at 9.
[56] Complaint ¶¶ 27–31.
[57] Copying in this context refers to "any infringement of the copyright holder's exclusive rights" set forth in the Copyright Act. *Gates Rubber Co. v. Bando Chem. Indus., Ltd.*, 9 F.3d 823, 832 n.6 (10th Cir. 1993) (citing 17 U.S.C. § 106).
[58] 17 U.S.C. § 102(a).
[59] *See, e.g.*, *Feist Publ'ns v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991); *Gates Rubber Co.*, 9 F.3d at 831; *La Resolana Architects, PA v. Reno, Inc.*, 555 F.3d 1171, 1177 (10th Cir. 2009).
[60] *Craft Smith, LLC v. EC Design, LLC*, 969 F.3d 1092, 1100 (10th Cir. 2020).
[61] 17 U.S.C. § 410(c).

If a plaintiff produces prima facie evidence of a valid copyright, the burden shifts to the

defendant to rebut the presumption of validity.[62] A defendant "may overcome this presumption

by presenting evidence and legal argument" showing the copyright is invalid.[63] The evidence

needed to rebut the presumption varies depending on the challenge.[64] Given the United States

Copyright Office's tendency to summarily issue copyrights, courts are counseled against placing

too much weight on registrations as proof of valid copyright.[65] Rebuttal evidence should be

carefully reviewed for issues concerning ownership and chain of title.[66]

Where a certificate of registration is issued more than five years after publication, a

plaintiff is not automatically afforded a prima facie presumption of valid copyright.[67] "[T]he

evidentiary weight to be accorded the certificate of a registration made thereafter shall be within

the discretion of the court."[68] In exercising that discretion, some courts automatically afford no

weight to untimely certificates, while others automatically extend a copyright's presumptive

validity.[69] Often, in determining whether to afford weight to an untimely certificate, courts look

for record evidence showing "plaintiff's involvement in purveying the subject item over the

---

[62] *Gates Rubber Co.*, 9 F.3d at 831–32.

[63] *See Meshwerks, Inc. v. Toyota Motor Sales U.S.A., Inc.*, 528 F.3d 1258, 1262 (10th Cir. 2008).

[64] *Andrien v. S. Ocean Cnty. Chamber of Com.*, 927 F.2d 132, 134 (3d Cir. 1991).

[65] *Universal Furniture Int'l, Inc. v. Collezione Europa USA, Inc.*, 618 F.3d 417, 428 (4th Cir. 2010).

[66] *Universal Furniture*, 618 F.3d at 428; 3 Nimmer on Copyright § 12.11 (2022) (explaining that, because the Copyright Office summarily issues registrations, courts would do well to "assess other relevant indicia of ownership, such as the parties' intent and the terms of transfer agreements and other documents establishing a chain of title" (internal citations omitted)).

[67] *Sunrise Home Health Care, LLC v. Erickson*, No.2:11-cv-605 TS, 2011 WL 3240441, at *2 (D. Utah July 28, 2011).

[68] 17 U.S.C. § 410(c).

[69] *Compare Sunrise Home Health*, 2011 WL 3240441, at *2 (automatically denying presumptive validity to a late-filed copyright), *and Brookwood Homebuilding & Remodeling, LLC v. Landis Reed Homes, LLC*, 267 F. Supp. 3d 685, 691 (W.D.N.C. 2017) (same), *and Tomelleri v. Zazzle, Inc.*, No. 13-cv-02576-EFM-TJJ, 2015 WL 8375083, at *1 (D. Kan. Dec. 9, 2015) (same), *and Home Design Servs. v. Starwood Constr., Inc.*, 801 F. Supp. 2d 1111, 1116–17 (D. Colo. 2011) (same), *with Graphic Design Mktg. v. Xtreme Enters.*, 772 F. Supp. 2d 1029, 1032–33 (E.D. Wis. 2011) (concluding registration is evidence of valid copyright even though obtained ten years after publication), *and Telerate Sys. Inc. v. Caro*, 689 F. Supp. 221, 227 (S.D.N.Y. 1988).

course of many years,"[70] or plaintiff's ownership of numerous valid copyrights for similar works.[71] The validity of the copyright itself is sometimes used as a factor in deciding how much weight to afford an untimely certificate.[72]

With this guidance, the court evaluates Plaintiffs' ownership of valid copyrights separately for each of the three trail maps in question.

### 1. Jackson Mountain

Plaintiffs argue they own a valid copyright for the 1993 Jackson Mountain ski trail painting because they provided a copy of the certificate of registration for the painting.[73] In response, Defendants argue the certificate carries no weight because registration was long-delayed after publication.[74] Defendants further argue a dispute of fact concerning present ownership of the copyright precludes summary judgment.[75] Considering the evidence in a light favorable to Defendants, the court concludes there is a genuine dispute as to whether Plaintiffs own a valid copyright for the 1993 Jackson Mountain ski trail painting and denies summary judgment on this count.

First, Plaintiffs are not automatically entitled to a prima facie presumption of ownership of valid copyright on the Jackson Mountain painting. The painting was completed on October 25,

---

[70] 3 Nimmer on Copyright § 12.11 (2022); *see also Estate of Smith v. Cash Money Records*, 253 F. Supp. 3d 737, 745 (S.D.N.Y. 2017) (affording no presumption of validity to late-filed registration because plaintiff only just filed the copyright in response to alleged infringement); *Michael Grecco Photography, Inc. v. Everett Collection, Inc.*, 589 F. Supp. 2d 375, 382 (S.D.N.Y. 2008) (giving weight to late-filed copyrights because there existed "considerable evidence[,] including the various license agreements[,] demonstrating that plaintiff does indeed own the copyright").
[71] *See CJ Prods. LLC v. Snuggly Plushez LLC*, 809 F. Supp. 2d 127, 143–44 (E.D.N.Y. 2011).
[72] *See, e.g.*, *Religious Tech. Ctr. v. Netcom On-Line Commc'n Servs., Inc.*, 923 F. Supp. 1231, 1242 (N.D. Cal. 1995).
[73] Mot. Summ. J. at 6–7.
[74] Opp. Summ. J. at 6–7.
[75] *Id.*

1993, and the certificate of registration was not issued until twenty-three years later, on December 9, 2016[76]—well after the five-year period.[77]

Second, based on the record evidence the court declines to afford weight to the delayed registration and extend the presumption of validity. There is nothing in the record showing Mr. Niehues or Niehues, LLC consistently used the painting for years after obtaining the copyright, or even for years after its creation. In fact, the evidence shows that within two years of obtaining the certificate of registration Niehues, LLC sought permission to use the painting for book and print purposes.[78] Similarly, the record only shows Plaintiffs own one presumptively valid copyright for a similar work.[79] Additionally, as explained below, there are questions concerning the chain of title. For all these reasons, Plaintiff is not entitled to a continued presumption of validity on the Jackson Mountain copyright.

Finally, Plaintiffs have not, as a matter of law, established ownership of a valid copyright. Without the prima facie presumption of validity, Plaintiffs bear the burden of proving ownership of a valid copyright.[80] The dispute here is over ownership and Plaintiffs do not meet their burden.

---

[76] Jackson Mtn. Cert. of Reg.

[77] 17 U.S.C. § 410(c).

[78] Defs. Exh. B.

[79] Only the Big Sky certificate of registration was filed within five years of completion on the work. *See* Big Sky Cert. of Reg. While Plaintiffs may own many presumptively valid registrations for other similar works, they have not produced this evidence.

[80] At several points in their briefing, Plaintiffs mistakenly assert Defendants have not met their burden to overcome the presumption of valid copyright. *See* Reply Summ. J. at 12 ("Defendants have not identified any inaccurate or false statements in any of the registrations that would lead them to being invalidated or that cut against giving Plaintiffs a presumption of ownership. . . . Defendants bear the burden of overcoming this presumption . . . ."), 14 ("Plaintiffs' are entitled to a presumption of ownership in the Copyrighted Artwork, which has not been adequately rebutted by Defendants."). But because Mr. Niehues's certificate of registration was issued well after five years, Plaintiffs are "not automatically entitled to the prima facie presumption of copyright validity." *Sunrise Home Health*, 2011 WL 3240441, at *2. And because the court in its discretion accorded no weight to the late registrations, Plaintiffs carry the burden of proving they own a valid copyright. *See id.*

The record contains conflicting evidence concerning the chain of title for the Jackson Mountain copyright. The copyright registration was issued to Mr. Niehues in 2016.[81] But two years later, Mr. Niehues indicated he did not have book or print rights for the Jackson Mountain painting.[82] Later that same year, Niehues, LLC sought and obtained rights to use the Jackson Mountain painting in a book and for media promotional materials, recognizing "Jackson Hole Mountain Resort retains the copyright for the 1993 Jackson Hole Mountain ski map image."[83] ORSC and Niehues, LLC then modified their contract in 2019 to include book and print rights for the Jackson Mountain painting.[84] These facts give rise to the inference that at some point between 2016 and 2018 Jackson Resort obtained copyright ownership of the Jackson Mountain painting and Niehues, LLC was subsequently granted some rights to use the painting, although it is unclear what rights. Viewed in the light most favorable to the non-moving party, Defendants' showing is therefore sufficient to create a genuine dispute of fact as to whether Plaintiffs own the copyright for the Jackson Mountain painting.

Relying on *Meshwerks, Inc. v. Toyota Motor Sales U.S.A., Inc.*, Plaintiffs argue ownership should be presumed because there are no challenges to authorship of the work or the copyright filing prerequisites.[85] Essentially, Plaintiffs argue that absent a dispute over authorship or compliance with the Copyright Act, they should be entitled to a prima facie presumption of ownership of valid copyright, notwithstanding the untimely certificate of registration or chain of title issues. The court does not read *Meshworks* so broadly. In that case, the Tenth Circuit said,

---

[81] Jackson Mtn. Cert. of Reg.
[82] Exhibit at 12, 15.
[83] Defs. Exh. B.
[84] Pls. Addendum at 3.9.
[85] 528 F.3d 1258 (10th Cir. 2008); Reply Summ. J. at 11.

"Because Meshworks obtained registration certificates for its models from the Copyright office, we presume that it holds a valid copyright," and then cited to the statute creating a presumption of valid copyright ownership for certificates filed within five years of publication.[86] The facts in *Meshworks* do not indicate there was any issue with untimely registration or chain of title.[87] Thus, *Meshwerks* merely reinforces the statutory presumption of validity for a timely certificate. It does not support extending the presumption of ownership for a valid copyright to untimely certificates when it is clear the filer is the author and followed statutory procedures in filing the copyright.

Plaintiffs' factual allegations and evidence are insufficient to establish ownership. In briefin, they claim Mr. Niehues merely erred in stating Jackson Resort owned the copyright to the Jackson Mountain painting.[88] Plaintiffs provide, however, no factual support for this assertion. They next point out "there is no evidence" that Mr. Niehues transferred ownership of the Jackson Mountain copyright to Jackson Resort and their correspondence itself cannot qualify as a transfer of ownership because it is unsigned.[89] It is true that the letter would not qualify as a valid transfer of copyright.[90] But to avoid summary judgment, all Defendants need to do is bring forth specific facts to rebut Plaintiffs' claim and all justifiable inferences are to be drawn in Defendants' favor.[91] Thus, even without direct evidence of a transfer of ownership for the copyright, the facts listed above support such an inference.

---

[86] *Meshwerks*, 528 F.3d at 1262 (citing 17 U.S.C. § 410(c)).
[87] *Id.* at 1260–61 & n.2 (noting Meshwerks was hired to create model cars sometime after 2004 and the case was filed in 2008 after Meshwerks registered copyrights for the model cars).
[88] Reply Summ. J. at 3.
[89] *Id.* at 13–14.
[90] 17 U.S.C. § 204(a) ("A transfer of copyright ownership . . . is not valid unless an instrument of conveyance . . . is in writing and signed by the owner of the rights conveyed . . . .").
[91] *Pelt*, 539 F.3d at 1280; *Liberty Lobby*, 477 U.S. at 255.

Moreover, it is Plaintiffs who must bring forth evidence to establish ownership of valid copyright.[92] For their part, Plaintiffs attach pictures from the United States Copyright Office website showing a search for copyrights registered to "James Niehues" pulls up Mr. Niehues's 2016 copyright registration and a search for copyrights registered to "Jackson Hole" yields no results.[93] The court finds this evidence unpersuasive and insufficient to establish ownership as a matter of law. As an initial matter, Plaintiffs have provided nothing to establish the accuracy or completeness of their use of the website's search function. More importantly, "registrations merely offer evidence of ownership, and that showing need not be dispositive of the matter if contrary proof is available."[94] While a transfer of copyright ownership "may be recorded in the Copyright Office," it is not required for ownership.[95] "One can own a copyright without registering."[96] Thus, this evidence is not enough to dispel the genuine dispute concerning ownership, as it does not establish Mr. Niehues owns the copyright as a matter of law, even if it supports such an inference.

Accordingly, Plaintiffs are not entitled to summary judgment for copyright infringement on the Jackson Mountain painting. Their late-filed copyright registration fails to qualify for a prima facie presumption of validity and the court declines to afford weight to the certificate. Defendants proffered evidence showing a material dispute exists concerning ownership of the copyright, and Plaintiffs have not shown ownership as a matter of law. Because ownership is

---

[92] *Pelt*, 539 F.3d at 1280.
[93] Reply Summ. J. Exhs. 2, 3.
[94] *Blue Planet Software, Inc. v. Games Int'l, LLC*, 334 F. Supp. 2d 425, 437 (S.D.N.Y. 2004).
[95] *See* 17 U.S.C. § 205(a). Registering a transfer of ownership on a copyright is, however, required to properly record the transfer and to bring a copyright infringement suit. *See* 17 U.S.C. §§ 205(c), 411(a); *Fourth Est. Pub. Benefit Corp. v. Wall-Street.com, LLC*, 139 S. Ct. 881, 891 (2019).
[96] *Alaska Stock, LLC v. Houghton Mifflin Harcourt Pub. Co.*, 747 F.3d 673, 678 (9th Cir. 2014).

material to proving copyright infringement, Plaintiffs' claim on the Jackson Mountain painting fails.

### 2. Taos, NM

Plaintiffs next argue they own a valid copyright for the Taos, NM painting.[97] Once again, Defendants argue the registration certificate is without the presumption of validity due to its untimeliness, and a dispute of fact over copyright ownership precludes summary judgment on this claim.

On their first contention, Defendants are correct. Plaintiffs are not automatically afforded a presumption of ownership for valid copyright on the Taos, NM painting. The copyright for the Taos, NM painting was registered in 2016, twenty-three years after its publication in 1993.[98] Because the registration occurred after the five-year statutory window, the certificate does not automatically constitute prima facie evidence of a valid copyright and the facts stated therein. [99]

As before, the court declines to afford weight to the delayed copyright certificate. There is no record evidence showing consistent usage of the painting and only one presumptively valid copyright for another similar work owned by Plaintiffs. Additionally, as discussed below, Defendants have produced evidence challenging ownership of the copyright. For these reasons,

---

[97] Mot. Summ. J. at 3–4, 6–7.
[98] Taos Cert. of Reg.
[99] *See Sunrise Home Health*, 2011 WL 3240441, at *2; *see also* 17 U.S.C. § 410(c) ("In any judicial proceedings the certificate of a registration made before or within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate.").

the court finds there is an insufficient basis to extend the presumption of validity,[100] and Plaintiffs must establish in the first instance ownership of a valid copyright.[101]

Plaintiffs, however, fail to establish ownership of a valid copyright because there are disputes of fact over chain of title. Mr. Niehues obtained a copyright for the Taos, NM painting in 2016.[102] A later document from 2018 indicates the Taos Resort owned the copyright for the painting, not Niehues, LLC.[103] In the document, Niehues, LLC sought book rights for the Taos, NM painting, stating "I am seeking rights for this image in a coffee table book. This request also includes the use of the image in any media to promote the book. Taos retains the copyright for the 1993 Taos ski map image."[104] That same year, Niehues, LLC seemingly confirms its limited rights to the Taos, NM painting because it only granted ORSC "the right to produce, market and sell this image for Books."[105] Yet the next year, in the Addendum to the contract, Niehues, LLC granted ORSC expanded print rights, including "the immediate exclusive right to produce, market and sell" all Mr. Niehues's art in the Exhibit for "marketing, web development, and sales and accounting services."[106]

Because Plaintiffs bear the ultimate burden of persuasion at trial, to succeed on this claim they must show that the evidence of ownership is so one-sided that they must prevail as a matter

---

[100] *See Michael Grecco Photography,* 589 F. Supp. 2d at 382 (extending presumption of validity for delayed copyrights where there was no evidence showing the copyrights were invalid or had issues with ownership, and there was "considerable evidence [,]including various license agreements," demonstrating ownership); *ABRO Indus.*, 2017 WL 4954698, at *6 (declining to extend presumption of validity where plaintiffs failed "to produce any deposit materials that would aid the Court in confirming the scope of the registrations").

[101] *See Sunrise Home Health*, 2011 WL 3240441, at *2 ("Without the presumption of validity, Plaintiffs bear the burden of proving ownership of a valid copyright.").

[102] Taos Cert. of Reg.

[103] Defs. Exh. C.

[104] *Id.*

[105] Exhibit at 10, 15.

[106] Addendum at 3.2.

of law.[107] Based on the facts above, it is unclear what rights Plaintiffs own in the Taos, NM painting. While the copyright registration was issued to Mr. Niehues in 2016, the 2018 document and Exhibit permit an inference that Mr. Niehues no longer owned the copyright and was merely granted book rights by the Taos Resort.[108] The Addendum muddies the waters, showing that Niehues, LLC granted greater rights to ORSC without identifying the basis for those rights.[109]

To rebut this conclusion, Plaintiffs again produce printouts from the Copyright Office website showing a search for copyrights registered to "James Niehues" pulls up Mr. Niehues's 2016 Taos, NM copyright registration, and a search for copyrights registered to "Taos" yields no results.[110] They also argue there is no evidence of a valid transfer of ownership and the 2018 document is insufficient to transfer ownership.[111] As discussed earlier, the web search fails to establish ownership as a matter of law because a transfer of copyright ownership does not require registration.[112] And while Defendants' evidence may be insufficient to show a valid transfer occurred, it is sufficient to create an inference of a transfer of ownership and rebut Plaintiffs' claim of ownership. In briefing, Plaintiffs next assert Mr. Niehues erred in stating Taos Ski Resort owns the copyrights for the 1993 painting, but fail to provide factual support for this assertion.[113] Finally, Plaintiffs produce a 2017 letter between Mr. Niehues and Taos Resort, detailing Mr. Niehues's plan to paint updated Taos Resort trail maps.[114] The letter indicates that upon full payment by Taos Resort, it would have a license "to use the image in any way for as

---

[107] *See Liberty Lobby*, 477 U.S. at 251–52.
[108] *See* Defs. Exh. C.; Exhibit at 10, 15.
[109] Addendum at 3.2.
[110] Reply Summ. J. Exh. 3, ECF No. 41-3, filed Feb. 24, 2023; Reply Summ. J. Exh. 6, ECF No. 41-6, filed Feb. 24, 2023.
[111] Reply Summ J. at 5, 13–14.
[112] *See Alaska Stock, LLC*, 747 F.3d at 678.
[113] Reply Summ. J. at 4.
[114] Reply Summ. J. Exh. 5, ECF No. 41-5, filed Feb. 24, 2023.

long as wanted" but Mr. Niehues would "retain ownership of the original and the original copyright."[115] Plaintiffs assert "there is no evidence that Taos disputed this ownership claim."[116] Yet there is no evidence Plaintiffs' copyright ownership for these 2017 updated maps has any bearing on their copyright ownership for the 1993 painting, nor do Plaintiffs explain the connection.[117] In sum, the facts show there remains sufficient disagreement over ownership to prevent summary judgment.

Plaintiffs make the same legal arguments as before, relying on *Meshwerks* as a basis for claiming entitlement to a presumption of ownership for a valid copyright.[118] As explained previously, *Meshwerks* merely reiterates the statutory rule creating a presumption of ownership for valid copyright where the registration certificate is obtained within five years of first publication.[119] Because Plaintiffs' copyright for the Taos, NM painting was obtained more than five years after first publication, they are not automatically entitled to that presumption and *Meshwerks* is unhelpful.

On the Taos, NM painting, Plaintiffs have not established ownership of valid copyright as a matter of law, so their motion for summary judgment is denied on this count. The registration certificate is not entitled to a presumption of validity because it was filed more than five years after publication, and the court declines to afford weight to the delayed certificate. As a whole, the record evinces a genuine dispute regarding ownership of the copyright, requiring submission to a jury.

---

[115] *Id.*
[116] Reply Summ. J. at 5.
[117] *See generally id.* Inasmuch as Plaintiffs rely on this letter to establish copyright ownership, it suffers a number of deficiencies. It is not entirely clear what paintings were created as part of this "summer and winter trail map project" or if Mr. Niehues registered copyrights for these paintings.
[118] *Id.* at 11–12 (citing *Meshwerks, Inc.*, 528 F.3d at 1262).
[119] *See Meshwerks*, 528 F.3d at 1262 (citing 17 U.S.C. § 410(c)).

### 3. Big Sky

Lastly, Plaintiffs argue they own a valid copyright to the 2014 Big Sky ski map painting.[120] Defendants counter, arguing questions of fact exist as to what rights Plaintiffs have in Big Sky. The evidence on this point, however, raises no genuine dispute.

Plaintiffs produced prima facie evidence for ownership of a valid copyright, namely, a copyright certificate for the 2014 Big Sky ski map registered within five years of publication.[121] To rebut this presumption, Defendants quote a 2013 letter where Mr. Niehues informs Big Sky Resort that it "will have the license to use the image in any manner for as long as wanted."[122] The letter continues, stating Mr. Niehues will "retain ownership of the original and the original copyright."[123] Defendants argue this should be construed as granting Big Sky Resort "an exclusive right to the image," thereby creating a question of fact "as to what rights Plaintiffs retain."[124] But Defendants provide no caselaw or additional facts to support such an interpretation, and this interpretation conflicts with the plain language of the letter.[125] The letter clearly indicates Mr. Niehues retained ownership of the copyright.[126] No reasonable jury could conclude otherwise. Therefore, for purposes of their motion for summary judgment, Plaintiffs have shown they hold a valid copyright in the Big Sky painting and the court next evaluates whether Defendants infringed on that copyright.

---

[120] Mot. Summ. J. at 3, 6–7.
[121] Big Sky Cert. of Reg.
[122] Defs. Exh. A.
[123] *Id.*
[124] Defs. Opp. Summ. J. at 7.
[125] *Id.*
[126] Defs. Exh. A.

### B. Unauthorized Copying of Original Elements of Copyrighted Material

The second element of a copyright claim consists of two components: factual copying and legal copying, or the substantial similarity test.[127] A copyright plaintiff bears the burden of proof on both components.[128] Courts evaluating unauthorized copying may properly address these components in either order.[129] In this case, it makes the most sense to start with the second component—legal copying.[130]

### 1. Legal Copying Framework

Legal copying, or the substantial similarity test, asks whether copying constitutes actionable infringement.[131] "The mere fact that a work is copyrighted does not mean that every element of the work may be protected."[132] Copyright protects only the author's original expression of ideas, not the ideas themselves.[133] Where similarity between works lies in unprotectable ideas, "or in expression that is not proprietary to plaintiff, then an essential ingredient is lacking from plaintiff's prima facie case."[134] A defendant can be a "copier but not

---

[127] *See Blehm v. Jacobs*, 702 F.3d 1193, 1199 (10th Cir. 2012); *Craft Smith*, 969 F.3d at 1101; 4 Nimmer on Copyright § 13D.06 (2022).

[128] *See Blehm*, 702 F.3d at 1199.

[129] *Gates Rubber Co.*, 9 F.3d at 833 ("Although we suggest that it will often be helpful to make an initial determination of whether the defendant copied portions of the plaintiff's program before determining whether the copying involved protectable elements under the copyright law, there may be cases where the issue of protectability can more efficiently be addressed first. The order of the analysis will depend on the individual facts and issues in each case.").

[130] Factual copying requires showing access to the copyrighted work and probative similarities between it and the alleged infringing work. *See Gates Rubber Co.*, 9 F.3d at 832. In cases where a plaintiff is unable to demonstrate access to the copyrighted work, factual copying may be established through showing the two works are strikingly similar. *La Resolana Architects*, 555 F.3d at 1179. Plaintiffs argue they have established factual copying through the latter, by showing the works are strikingly similar. Mot. Summ. J. at 7. The court finds it unnecessary to evaluate this argument because, as explained, Plaintiffs do not show actionable legal copying.

[131] *Blehm*, 702 F.3d at 1199.

[132] *Feist Publ'ns*, 499 U.S. at 348.

[133] *Blehm,* 702 F.3d at 1200; *see* 17 U.S.C. § 102(a) (explaining copyright only protects "original works of authorship").

[134] 4 Nimmer on Copyright § 13.03 (2023).

an infringer under copyright law."[135] Liability for copyright infringement attaches only if a

defendant copies protected elements of a copyrighted work.[136] "To impose such liability, the

court must find substantial similarity" between plaintiff's legally protectable elements and the

defendant's work.[137] This requires the court to answer two questions: first, which elements of a

copyrighted work are legally protectable; and second, compare "whether the copyrighted work's

legally protectable elements are 'substantially similar' to an accused work."[138]

### a.  Legally Protectable Elements

To answer the first question, a court must "distill the protectable elements of the

copyrighted work."[139] In other words, the court separates the ideas which are not protectable

from the author's protected expression of the work (the idea/expression distinction).[140] Under

this framework, fact-based works exhibiting little creativity contain less protectable matter than

works of significant creative effort.[141] Thus, works that "geographically reproduce an object

---

[135] *Blehm*, 702 F.3d at 1208.

[136] *Gates Rubber Co.*, 9 F.3d at 833; *Blehm*, 702 F.3d at 1208 ("Copying alone is not infringement. The infringement determination depends on what is copied.").

[137] *Country Kids 'N City Slicks, Inc. v. Sheen*, 77 F.3d 1280, 1283 (10th Cir. 1996). The Tenth Circuit has at times used the "abstraction-filtration-comparison" test to answer these questions. *Blehm*, 702 F.3d at 1201 n.4. This test was developed to evaluate complex computer software infringement claims but has been applied outside that context. *Country Kids*, 77 F.3d at 1285 n.5. Whether this test is helpful depends on "the claims involved, the procedural posture of the suit, and the nature of the works at issues." *Blehm*, 702 F.3d at 1201 n.4. Where the works at issue are relatively simple, a court may forgo the abstraction-filtration-comparison test, and instead focus on separating the unprotectible ideas from the protectible expression, and then compare the protectible expression to potentially infringing work. *Id.* The latter approach is suitable here.

[138] *Blehm*, 702 F.3d at 1200.

[139] *Id.*

[140] *Country Kids*, 77 F.3d at 1284–85; *Blehm*, 702 F.3d at 1200–01.

[141] *See Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 943 (10th Cir. 2002).

exactly as it occurs in nature" have less protection.[142] Only the artistic expression of naturally occurring objects is protected, not similarities arising "from a commonality in the subject matter."[143]

For purposes of copyright protection, maps are considered pictorial, factual compilations, "presenting information about geographic relationships" of naturally occurring objects.[144] The "[p]hysical facts such as the names of geographic locations, landmasses, bodies of water and landmarks are not capable of copyright protection."[145] Basic maps featuring "color, shading, and labels that use standard fonts and shapes do[] not meet the minimum level of creativity for copyright protection."[146] "The protection that each map receives extends only to its original expression, and neither the facts nor the idea embodied in the maps is protected."[147] To determine whether a map contains protectable elements, courts look at "creativity in both the selection, coordination, and arrangement of the facts that they depict, and the pictorial way in which they are depicted."[148]

---

[142] 4 Nimmer on Copyright § 13.03; *see Vickery Design, Inc. v. Aspen Bay Co.*, 185 F.3d 876, *1 (10th Cir. 1999) (table) ("The copyright law does not allow a monopoly on the idea of an object occurring in nature."); *see also Folkens v. Wyland Worldwide, LLC*, 882 F.3d 768, 770, 776 (9th Cir. 2018) ("As a general rule, under our copyright law, an artist may not use copyright law to prevent others from depicting such ideas first expressed by nature."); *Enchant Christmas Light Maze & Mkt. Ltd. v. Glowco, LLC*, 958 F.3d 532, 538 (6th Cir. 2020) (explaining that realistic reproductions of live animals carry "a thin copyright at best"); *Kay Berry, Inc. v. Taylor Gifts, Inc.*, 421 F.3d 199, 208–09 (3d Cir. 2005) ("A copyright on a work which bears practically a photographic likeness to the natural article is likely to prove a relatively weak copyright." (internal citation and quotation omitted)).

[143] *Vickery Design*, 185 F.3d at *1.

[144] *See Wilson v. Brennan*, 666 F. Supp. 2d 1242, 1254–55 (D.N.M. 2009), *aff'd*, 390 F. App'x 780 (10th Cir. 2010); *see also Streetwise Maps, Inc. v. VanDam, Inc.*, 159 F.3d 739, 747–48 (2d Cir. 1998); *Mason v. Montgomery Data, Inc.*, 967 F.2d 135, 139–41 (5th Cir. 1992).

[145] *Wilson*, 666 F. Supp. 2d at 1254–55.

[146] *Id.*

[147] *Mason*, 967 F.2d at 140 (emphasis omitted).

[148] *Wilson*, 666 F. Supp. 2d at 1254–55; *see also Streetwise Maps*, 159 F.3d at 747–48 ("[W]e focus on the overall manner in which Streetwise selected, coordinated, and arranged the expressive elements in its map, including color, to depict the map's factual content."); *see also Mason*, 967 F.2d at 142 (looking at maps for "creativity in both the selection, coordination, and arrangement of the facts that they depict, and ... in the pictorial, graphic nature of the way that they do so").

On summary judgment, a plaintiff carries the burden of proffering evidence showing which individual element or arrangement of elements is protected.[149] This may be through an expert identifying original elements,[150] testimony or affidavits from the creator explaining the artistic choices,[151] or, in cases with maps, producing preexisting maps to allow comparisons to identify the plaintiff's creativity in depicting the geographic features.[152] A plaintiff must show the maps "are sufficiently creative to qualify for copyright protection."[153]

Drawing the line between the unprotected ideas or facts within a work, and the creator's original expression of the ideas or facts, is the most complex part of the legal copying inquiry.[154] Courts are instructed to take an ad hoc approach, evaluating works on a case-by-case basis, keeping in mind that the primary objective of copyright is "not to reward the labor of authors but to promote the Progress of Science and useful Arts."[155]

### b. Substantial Similarity

Once the court identifies the protected elements, the second question in legal copying is whether the accused work is "substantially similar" to the protected elements of the copyrighted

---

[149] *See Savant Homes, Inc. v. Collins*, 809 F.3d 1133, 1143 (10th Cir. 2016); *Tomelleri*, 2015 WL 8375083, at *27–28.

[150] *See Savant Homes*, 809 F.3d at 1142–43; *Mason*, 967 F.2d at 139–40 ("The record also contains affidavits in which licensed surveyors and experienced mapmakers explain that the differences between Mason's maps and those of his competitors are the natural result of each mapmaker's selection of sources, interpretation of those sources, discretion in reconciling inconsistencies among the sources, and skill and judgment in depicting the information.").

[151] *Mason*, 967 F.2d at 139–40 ("[T]he evidence in this case demonstrates that Mason exercised sufficient creativity when he created his maps. In his deposition and affidavit, Mason explained the choices that he independently made to select information from numerous and sometimes conflicting sources, and to depict that information on his maps.").

[152] *See Wilson*, 666 F. Supp. 2d at 1254–55; *Mason*, 967 F.2d at 139–40 ("The record in this case contains copies of maps created by Mason's competitors that prove beyond dispute that the idea embodied in Mason's maps is capable of a variety of expressions. Although the competitors' maps and Mason's maps embody the same idea, they differ in the placement, size, and dimensions of numerous surveys, tracts, and other features.").

[153] *Wilson*, 666 F. Supp. 2d at 1254–55; *Mason*, 967 F.2d at 139–40.

[154] *Blehm*, 702 F.3d at 1201 ("[T]he idea/expression distinction is the most complex part of the substantial similarity inquiry . . . ." (internal citation and quotation omitted)).

[155] *Savant Homes*, 809 F.3d at 1139 (internal citations and quotations omitted).

work.[156] This test asks if the two works, when looking at their "overall similarities rather than the minute differences," are so similar that "an ordinary reasonable person would conclude that the defendant unlawfully appropriated the plaintiff's protectible expression."[157] In essence, do the two works present the same aesthetic appeal such that an ordinary observer would overlook any disparities between the works?[158]

### 2.  Big Sky

Plaintiffs assert, "it is undisputed that the unauthorized works sold by the Defendants are substantially similar" to Mr. Niehues's painting and Defendants' product is "an exact reproduction" of the copyrighted Big Sky painting.[159] Relying on side-by-side copies of the work, Plaintiffs argue the remarkable resemblance between the two pictures makes summary judgment appropriate. Even assuming the works are substantially similar, Plaintiffs' summary judgment argument fails on a more fundamental level because they do not meet their burden of establishing that the elements of the Big Sky map are protectable.

Under governing law, the factual, naturally occurring, geographic information portrayed in the Big Sky map is not protected by copyright.[160] Only Mr. Niehues's creativity in his selection of facts, and artistic expression in depicting the natural, geographic features, is protectable.[161] Yet Plaintiffs point to no record evidence identifying how the map meets the

---

[156] *Craft Smith*, 969 F.3d at 1101. In works with scant creativity, there is less protectible material and a higher degree of similarity is required to show copyright infringement. *Jacobsen*, 287 F.3d at 942–44. To determine infringement in those cases, the court applies a "supersubstantial similarity test." *Id.* Neither party argues this test is applicable here.
[157] *Country Kids*, 77 F.3d at 1288 (quotation and citation omitted).
[158] *Id.* at 1299.
[159] Mot. Summ. J. at 7.
[160] *See, e.g.*, *Wilson*, 666 F. Supp. 2d at 1254; *Vickery Design*, 185 F.3d at *1.
[161] *See, e.g.*, *Mason*, 967 F.2d at 139–40.

minimum level of creativity and artistic expression for copyright protection.[162] Plaintiffs failed to identify facts or conduct any analysis of how Mr. Niehues selected, coordinated, or arranged the map features in an original way.[163] They do not explain how the map exemplifies Mr. Niehues's artistic expression, say through his use of unique colors, brush stroke style, or any other distinct characteristics.[164] Nor do they provide evidence showing how Mr. Niehues's Big Sky map depicts the factual material in a unique or original way, such as by comparing it with other maps of the area.[165] Consequently, the court cannot evaluate Mr. Niehues's originality in depicting the factual elements of the map. Meaning, the court cannot separate Mr. Niehues's creative expression from the factual ideas within his work. Without this, the court is wholly unable to determine whether the Big Sky map contains any protectable elements. And without copying of protectable elements, there can be no liability. Thus, even if Defendants' map is substantially similar to the Big Sky map, the court is unable to determine as a matter of law whether the copying constitutes actionable infringement.

As the moving party who bears the burden of persuasion at trial, to obtain summary judgment Plaintiffs "must establish, as a matter of law, all essential elements of their claim. They have failed to establish the similarities in Defendant's accused work infringed on copyright-

---

[162] *See* Fed. R. Civ. P. 56(c) (explaining that on summary judgment a party must support its factual position by "citing to particular parts of materials in the record").

[163] *Cf. Savant Homes, Inc.*, 809 F.3d at 1143 (upholding denial of summary judgment for copyright infringement on architectural plans because plaintiff "offered no evidence indicating (1) any individual element or (2) any arrangement of elements was protectable").

[164] *But see Tomelleri*, 2015 WL 8375083, at *27–28, 34–35 (denying summary judgment due to disputes concerning whether fish illustrations contained creative elements covered by copyright based in part on an affidavit from the plaintiff explaining how his illustrations were stylized and represented his artistic expression).

[165] *But see Mason*, 967 F.2d at 139–40 (finding map contained protectable elements based on reviewing record evidence of other maps which "prove[d] beyond a reasonable doubt that the idea embodied in Mason's maps is capable of a variety of expressions"); *Wilson*, 666 F. Supp. 2d at 1255–57 (determining plaintiff's maps qualified for copyright protection because a comparison of maps in the record "illustrate[d] the different decisions made by the parties concerning the factual content and pictorial depiction" of map elements).

protected elements of the Big Sky painting. Summary judgment must therefore be denied on this count.[166]

### C. Enhanced Damages for Willful Infringement

Finally, Plaintiffs request the court award enhanced damages for willful infringement. "In a case where the copyright owner sustains the burden of proving, and the court finds, that infringement was committed willfully, the court in its discretion may increase the award of statutory damages to a sum of not more than $150,000."[167] But Plaintiffs have not proven, as a matter of law, Defendants are liable for infringing on any copyrights. Consequently, there is no basis to find willful infringement and the court denies summary judgment on this request.

## ORDER

For the reasons stated herein, Plaintiffs' Motion for Summary Judgment is DENIED.

Signed June 9, 2023.

BY THE COURT

_____
David Barlow
United States District Judge

---

[166] Defendants assert several affirmative defenses in response to Plaintiffs' facts but without explaining the applicability of the defenses in arguing against Plaintiffs' motion for summary judgment. Opp. Summ. J. at 5. Because Plaintiffs have not met their initial burden on summary judgment for any counts, it is unnecessary for the court to address the applicability of the defenses or whether they are properly before the court.
[167] 17 U.S.C. § 504(c)(2).